THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ELENA BROWN and<br>DANIIL FEDORUK,<br><br>        Plaintiffs,<br><br>    v.<br><br>DEPARTMENT OF HOMELAND<br>SECURITY, *et al.*[1],<br><br>        Defendants. | Case No. C16-1685-RAJ<br><br>**ORDER** |

This matter comes before the Court on the parties' motions for summary judgment. Dkt. ## 15, 16. Both motions are opposed. Dkt. ## 16, 17. For the reasons that follow, the Court **GRANTS** Plaintiffs' Motion (Dkt. # 15) and **DENIES** Defendants' Motion (Dkt. # 16).

### I.    BACKGROUND

Plaintiffs Elena Brown and Daniil Fedoruk bring this action pursuant to § 10(b) of the Administrative Procedures Act ("APA"), 5 U.S.C. § 702, *et seq.*, seeking review of Defendant U.S. Citizenship and Immigration Services' ("USCIS") decision denying

---

[1] On March 31, 2017, James McCament became Acting Director of U.S. Citizenship and Immigration Services, automatically substituting for Lori Scialabba, former Acting Director, as a party in accordance with Federal Rule of Civil Procedure 25(d). On January 20, 2017, John F. Kelly was sworn in as Secretary of the U.S. Department of Homeland Security, automatically substituting for Jeh Johnson, former Secretary, as a party in accordance with Federal Rule of Civil Procedure 25(d).

ORDER - 1

Brown's petition to classify Fedoruk, the beneficiary, as an immediate relative child under 8 U.S.C. §§ 1101(b)(1) and 1151(b)(2)(A)(i).

**A. Factual Background**

Fedoruk, a native of Russia, was born on June 17, 1993[2]. Dkt. # 11 at 248-50. Fedoruk's biological parents are Konstantin Fedoruk and Nataliya Fedoruk. *Id.* Nataliya Fedoruk is also know as Natalia Robinson. *Id.* at 211. Brown is the paternal aunt of Fedoruk. *Id.* at 237.

On June 27, 2007, Fedoruk's biological father consented to the adoption of his son in a document intended to be filed in King County Superior Court. On August 24, 2007, Fedoruk and his biological mother completed and signed a B1/B2 visa application for Fedoruk. *Id.* at 285-86. The visa application states that Fedoruk intended to visit his grandparents and Brown in Kent, Washington for a period of one month. *Id*. On September 26, 2007, Fedoruk was issued a B1/B2 visa. *Id*. at 247.

On April 16, 2008, Fedoruk's biological mother signed a "Consent of Temporary Guardian," giving temporary guardianship of Fedoruk to Brown for the period of April 1, 2008 to April 1, 2011. *Id.* at 66-68. The "Consent of Temporary Guardian" indicates that all expenses related to Fedoruk's upbringing were to be paid for by Brown. *Id*. Two days later, Fedoruk was admitted to the United States with an authorized period of stay as a non-immigrant visitor until October 17, 2008. *Id*. at 247. He was 14 years old at that time. *Id*. Brown agreed to the terms of the "Consent of Temporary Guardian" and signed the document on April 19, 2008, the day after Fedoruk arrived in the United States. *Id*. On July 3, 2008, Fedoruk's biological mother consented to the adoption of her son in a document intended to be filed in King County Superior Court. *Id*. at 47-53.

---

[2] Plaintiffs' request that the Court take judicial notice of the administrative record relevant to this case (Dkt. # 11) is granted.

On July 16, 2008, Brown filed a petition to adopt Fedoruk in the King County Superior Court. He was 15 years old when the petition was filed. *Id*. at 78-85. On September 10, 2008, the King County Family Court received an anonymous call alleging that the adoption of "Danny or Daniel" by "Yelena or Elena Brown" was fraudulent and that "the child came to visit his aunt and now he is not returning back to his mother." *Id.* at 63. The caller also stated that "the aunt" was going to forge the mother's name and phone number and that the child's birth father may be cooperating with this fraudulent adoption. *Id*. The King County Family Court then attempted to contact Fedoruk's biological mother but was unable to confirm her consent to the adoption. *Id*. Plaintiffs allege that Fedoruk's biological mother suffers from mental illness and attempted to "sabotage" his adoption and refused to speak with the adoption case worker as a result of this illness. Plaintiffs further allege that Fedoruk's biological mother stopped having any contact with either Plaintiff in 2009. Dkt. # 15.

On March 16, 2011, Brown filed a Petition for Termination of Parent-Child Relationship in the Superior Court of Washington. *Id*. at 82-85. The petition alleges that Fedoruk's biological mother would not consent to the adoption but also would not provide Fedoruk with any support as his mother. *Id*. On April 25, 2011, when Fedoruk was 17 years old, the Washington Superior Court entered an order terminating Fedoruk's biological mother's parental rights. *Id*. at 91-92. On August 30, 2011, Brown moved that the Washington Superior Court "enter the adoption decree *nunc pro tunc* as of one day prior to the adoptee's 16th birthday (June 16, 2009) so that [Brown] may be allowed to file an immigration petition for him as [her] adopted son." *Id*. at 80. On September 2, 2011, a Commissioner of the Superior Court of the State of Washington issued a Decree of Adoption, granting Brown's petition to adopt Fedoruk. On the date the adoption was finalized, Fedoruk was 18 years old. *Id*. at 75-76. On the final page of the Decree, the Commissioner added a handwritten

ORDER - 3

notation "Nunc Pro Tunc June 16, 2009," which is the day before Fedoruk turned 16 years of age. *Id*.

### B. Procedural Background

On October 11, 2011, Brown filed a Form I-130, Petition for Alien Relative, on behalf of Fedoruk. *Id*. at 242-284. On November 19, 2012, USCIS denied the petition because Fedoruk did not qualify as a child because he was not under the age of 16 years old when the adoption was finalized. *Id*. at 200-201. On December 14, 2012, Brown appealed the decision to the Board of Immigration Appeals ("BIA"). *Id*. at 177. The BIA then dismissed the appeal. *Id*. at 119.

On August 4, 2014, Plaintiffs filed a case in this District, seeking review of the USCIS and the BIA's decisions. *See Brown v. DHS*, 2:14-cv-1184-JCC (W.D. Wash.). The parties then agreed that the USCIS would seek remand of the petition from the BIA in order to supplement the record before the USCIS and voluntarily dismissed the case. *Id*. On February 26, 2015, the USCIS filed a motion with BIA to re-open and remand Fedoruk's Form I-130 proceedings to the USCIS for further processing. *Id*. at 105-116. The USCIS then sent Brown a Request for Evidence ("RFE") regarding Fedoruk's adoption. *Id*. at 95-99. On October 7, 2015, the USCIS issued a Notice of Intent to Deny ("NOID") the petition and gave Brown the opportunity to respond to a newly issued decision from the BIA, *Matter of Huang*, 26 I. & N. Dec. 627 (BIA 2015) ("*Huang*"). *Id*. 32-22.

After receiving Brown's response, the USCIS denied her petition on February 11, 2016, and sought certification of the decision from the BIA. *Id*. at 19-26. On September 29, 2016, the BIA adopted and affirmed the USCIS decision. *Id*. at 1-9. On October 29, 2016, Plaintiffs filed this action, seeking review of the denial of Brown's petition. Dkt. # 1. Plaintiffs argue that the BIA improperly applied the

decision in *Huang* to Plaintiffs' case and failed to "promote the clear, unambiguous goals of the INA." Dkt. # 15.

## II. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In the context of a case where a party is seeking review of an administrative decision, "[a] district court is not required to resolve any factual issues when reviewing administrative proceedings." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir.1985). "Instead, the district court's function is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Boyang, Ltd. v. I.N.S.*, 67 F.3d 305 (9th Cir. 1995). Accordingly, summary judgment "is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Occidental Eng'g Co.*, 753 F.2d at 770.

Under the Administrative Procedure Act, a district court may review and set aside a final agency action if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "Agency action should be overturned only when the agency has 'relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Safari Aviation Inc. v. Garvey*, 300 F.3d 1144, 1150 (9th Cir. 2002) (quoting *Pac. Coast Fed'n of Fishermen's Ass'ns, Inc. v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1034 (9th Cir. 2001)). It is an abuse of discretion if the agency acts as if "there is no evidence to support the decision or if the decision was

based on an improper understanding of the law." *Kazarian v. U.S. Citizenship and Immigration Services*, 596 F.3d 1115, 1118 (9th Cir. 2010) (internal citations omitted).

The standard is "highly deferential, presuming the agency action to be valid." *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006). The reviewing court must give the agency's interpretation of its own regulations "substantial deference and must give such interpretation controlling weight unless doing so is inconsistent with the regulation or plainly erroneous." *Independent Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000).

### III. DISCUSSION

For a child of a U.S. citizen to obtain lawful permanent resident status, the U.S. citizen parent must file a Form I-130, Petition for Alien Relative, on behalf of the beneficiary to classify the child as an "immediate relative." 8 U.S.C. § 1154(a)(1)(A)(i). Under 8 U.S.C. § 1151(b)(2)(A)(i), an "immediate relative" is defined as "the children, spouses, and parents of a citizen of the United States." A "child" is defined as "an unmarried person under twenty-one years of age who is . . . adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years." 8 U.S.C. § 1101(b)(1)(E)(i).

Previous to the decision in *Huang*, the BIA applied a strict interpretation of the language in 8 U.S.C. § 1101(b)(1)(E)(i), holding that "[t]he act of adoption must occur before the child attains the age [specified in the Immigration and Nationality Act]." *See Matter of Cariaga*, 15 I. & N. Dec. 716, 717 (BIA 1976). The BIA rejected the contention that "a decree of adoption is fully effective as of the date entered *nunc pro tunc* and is entitled to recognition for immigration purposes." *See Matter of Drigo*, 18 I. & N. Dec. 223, 224 (BIA 1982). On July 8, 2015, the BIA modified its stance in *Huang*, noting that the previous rule that the BIA had applied was "too limiting in that

it does not allow us to adequately consider the interests of family unity." *Huang*, 26 I. & N. Dec. at 631. Pursuant to holding in *Huang* the BIA will recognize a *nunc pro tunc* order relating to an adoption "where the adoption petition was filed before the beneficiary's 16th birthday, the State in which the adoption was entered expressly permits an adoption decree to be dated retroactively, and the State court entered such a decree consistent with that authority." *Id*.

In the instant case, the USCIS applied the holding in *Huang* and found that, although Brown's petition to adopt Fedoruk was filed before Fedoruk turned 16 years old, there was no authority in Washington state law that expressly permits an adoption decree to be entered *nunc pro tunc*. The USCIS also noted that state case law established that the equitable remedy of *nunc pro tunc* was a tool to "correct [] the record so that the record accurately reflects the court's decision," rather than "remedy inaction." Dkt. # 11 at 19-26.

### A. Administrative Procedure Act Claim

Defendants, the Department of Homeland Security; USCIS; James McCament, Acting Director of U.S. Citizenship and Immigration Services; John F. Kelly, Secretary of the U.S. Department of Homeland Security; and Kathy Baran, USCIS California Service Center Director, argue that the USCIS's and BIA's interpretation of 8 U.S.C. § 1101(b)(1)(e) is entitled to *Chevron* deference and should be upheld. Following the two-step approach of the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Court must first determine whether Congress has directly spoken to the precise question at issue. *See Humane Soc. of U.S. v. Locke*, 626 F.3d 1040, 1054 (9th Cir. 2010). If the statute is silent or ambiguous with respect to the specific issue, the Court must then determine whether the agency's answer is based on a permissible construction of the statute. *Id.* "If a statute is ambiguous, and if the implementing

agency's construction is reasonable, *Chevron* requires a federal court to accept the agency's construction of the statute, even if the agency's reading differs from what the court believes is the best statutory interpretation." *Id.*; *see also Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc*., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

To be considered a "child" for purposes of derivative citizenship under 8 U.S.C. § 1431, an adopted child must be "adopted while under the age of sixteen years." 8 U.S.C. § 1101(b)(1)(E)(i). However, the statute does not say whether the term "adopted" refers to the effective date of an adoption, or whether the term refers to the date that the act of adoption occurred. Therefore, the statute is ambiguous with respect to the specific issue of whether the term "adoption" as used in the statute requires the adoption decree to be issued before the child reaches the age of 16 and the Court must proceed to the second step of the *Chevron* analysis.

At step two of the *Chevron* analysis, the Court must determine whether the BIA's interpretation of 8 U.S.C. § 1101(b)(1)(E)(i) is reasonable. Defendants argue that *Huang* is a reasonable interpretation of the statute because it balances the legitimate concern of deterring adoptions entered only to circumvent immigration restrictions with the desire to preserve family unity. Defendants also argue that while state courts typically have authority over domestic relations such as marriage and family law, immigration law exists independently of these laws and requires a separate evaluation of relationships that "can be used to perpetrate immigration fraud." Dkt. # 16.

At issue is the BIA's construction of the word "adopted" in § 1101(b)(1)(e)(i). While it is true that federal immigration law exists independently of laws governing domestic relations, "where the term in question involves a legal relationship that is created by state or foreign law, the court must begin its analysis by looking to that

ORDER - 8

law." *Minasyan v. Gonzales*, 401 F.3d 1069, 1076 (9th Cir. 2005). This is not a situation, as Defendants allege, where the question at issue is a result of a conflict between federal and state law. This matter is more accurately described as a question of whether a federal agency is giving due deference to state law in an area of law that is typically the province of the States; there is no federal law of domestic relations. *See De Sylva v. Ballentine*, 351 U.S. 570, 580, 76 S.Ct. 974, 100 L.Ed. 1415 (1956). Further, while the Supreme Court has held that "scope of a federal right is, of course, a federal question, ... that does not mean that its content is not to be determined by state, rather than federal law." *Id*. On September 2, 2011, a Commissioner of the Superior Court of the State of Washington issued a Decree of Adoption, *nunc pro tunc*, modifying the effective date of the decree to June 16, 2009. Therefore, Fedoruk was adopted prior to his 16th birthday as a matter of Washington law.

There is a strong federal policy favoring federal recognition of valid state court judgments. *See Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172–73, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001) (explaining that the courts expect a "clear indication" of congressional intent when an "administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power"). Further, it is well understood that "state courts exercise full authority over the judicial act of adoption." *See Ojo v. Lynch*, 813 F.3d 533, 539 (4th Cir. 2016) (citing to *Adoptive Couple v. Baby Girl*, 570 U.S. 637, 656, 133 S. Ct. 2552, 2565, 186 L. Ed. 2d 729 (2013)). The BIA attempted to address this concern in *Huang* by instituting its requirement that the State in which the adoption was entered expressly permit an adoption decree to be dated retroactively in order for a *nunc pro tunc* decree to be recognized. *Huang*, 26 I & N. Dec. at 631. The BIA specifically states that they "cannot give full faith and credit to a State adoption decree" without regard to whether state law specifically allows an adoption to be dated

ORDER - 9

retroactively. Therefore, this prong of the *Huang* test prong amounts to an assessment by a federal agency of whether a state court properly applied that state's law. This Court agrees with the only Circuit Court to analyze the holding in *Huang*[3], that if Congress "sought to place the interpretation [of the term adopted] in the hands of an administrative agency, such as the BIA, Congress would have made that intention 'unmistakably clear.'" *Ojo*, 813 F.3d at 540. Congress did not do so here.

Defendants' argument that *Huang* is a reasonable interpretation of the statute because it balances the preservation of family unity with fraud prevention is similarly unpersuasive. While the rule in *Huang* no longer discounts all *nunc pro tunc* adoption decrees issued after the child reaches the age of 16, it now only recognizes such adoption decrees after it determines that state law allows *nunc pro tunc* adoption decrees and, in cases where a decree was issued, that the state court acted consistently with that authority. *Huang*, 26 I & N. Dec. at 631. Thus, the BIA attempts to address fraudulent adoptions by paring down the total amount of allowed *nunc pro tunc* adoption decrees by supplanting the state court's interpretation of state law with its

---

[3] In *Amponsah v. Holder*, 709 F.3d 1318, 1319 (9th Cir.), *opinion withdrawn*, 736 F.3d 1172 (9th Cir. 2013), the Ninth Circuit held that BIA's "blanket rule against recognizing state courts' *nunc pro tunc* adoption decrees" as set out in *Cariaga* was an impermissible construction of §1101(b)(1)(E)(i) under *Chevron* because it gave "little or no weight to the federal policy of keeping families together, fails to afford deference to valid state court judgments in an area of the law—domestic relations—that is primarily a matter of state concern and addresses the possibility of immigration fraud through a sweeping, blanket rule rather than considering the validity of *nunc pro tunc* adoption decrees on a case-by-case basis." *Id*. After the *Amponsah* opinion was issued, the Ninth Circuit withdrew it after finding out that the BIA was considering whether to modify or overrule *Cariaga*. After the decision in *Huang*, the Ninth Circuit declined to determine whether the BIA's new rule was a permissible construction of the statute under *Chevron*, and remanded the case back to the BIA. *Amponsah v. Lynch*, 627 F. App'x 592, 594 (9th Cir. 2015). In light of the Ninth Circuit's subsequent withdrawal of its initial decision in *Amponsah*, its' holding is not dispositive, but its reasoning is persuasive for the purposes of this Motion.

ORDER - 10

own interpretation of state law, and not by determining whether there was actually a valid adoption. This is not a reasonable interpretation of the statute. Defendants do not provide persuasive argument that this new rule acts as a tool to prevent fraud such that it should be emphasized over the goal of preservation of family unity. Dkt. # 16 at 15. The Court finds that the BIA's interpretation of 8 U.S.C. § 1101(b)(1)(E)(i) is not entitled to deference and as a result, the BIA abused its discretion in denying Brown's petition.

### B. Equal Protection Claim

Plaintiffs also argue that Defendants' application of the decision in *Huang* violates the equal protection guarantee of the U.S. Constitution because it treats similarly situated persons differently by differentiating between adoptees that live in States that have express statutory authority for backdating adoption decrees and adoptees whose adoptions have been backdated based on their respective State's application of the common law concept of *nunc pro tunc* to adoption decrees.

It is undisputed that the Due Process Clause of the Fifth Amendment guarantees individuals equal protection under the law. *Dillingham v. INS*, 267 F.3d 996, 1004 (9th Cir. 2001). Where, as here, the classification between "types" of adoptees is not based on membership in a protected class and does not burden a fundamental constitutional right, the proper standard of review is rational basis scrutiny. *See Ursack Inc. v. Sierra Interagency Black Bear Grp.*, 639 F.3d 949, 958 (9th Cir. 2011); *see also Alvarenga-Villalobos v. Ashcroft*, 271 F.3d 1169, 1174 (9th Cir. 2001) ("Distinctions between different classes of aliens in the immigration context are subject to rational basis review and must be upheld if they are rationally related to a legitimate government purpose."). Therefore, the Court must consider whether the BIA's interpretation of 8 U.S.C. § 1101(b)(1)(E)(i) in *Huang* is rationally related to a legitimate government purpose. As no suspect class is involved and the only issue is

whether Defendants' interpretation of the statute is rational, Plaintiff's equal protection argument can be "folded into the APA argument". *Ursack Inc.*, 639 F.3d at 955, 958 (noting that the standard of review under the APA is identical to rational basis scrutiny).

As noted above, the BIA's holding in *Huang* is not rationally related to the legitimate government purpose of preventing fraudulent adoptions. Defendants argue that *Huang* seeks to deter adoptions that are back-dated simply to confer an immigration benefit, but does not provide persuasive argument that the interpretation and rules set out that decision are rationally related to that purpose. *Huang* merely attempts to decrease the number of adoptions that are backdated *nunc pro tunc*; it does not take into account whether there is actual fraud or the individual circumstances of each case.

Fedoruk's circumstances are a perfect example of a situation where the BIA's interpretation of the statute minimizes the importance of family unity in favor of a rule that does not further the legitimate purpose of fraud prevention. Fedoruk's biological parents are not in contact with Plaintiffs and provide no support. Brown first filed a petition to adopt Fedoruk well before he was 16 years old. Due to circumstances that were out of Plaintiffs' control, they were unable to finalize this adoption until 2011. Yet, Brown's Form I-130 Petition was still denied. The Court notes that the conclusions reached in this Order are in keeping with the legislative history of the Immigration and Nationality Act. While Congress was concerned about the use of fraudulent adoption to gain immigration benefits, they provided children with liberal treatment because they recognized the importance of family unity. *See* S. Rept. 1515, 81st Cong., 2d Sess. 468. In this case, the BIA's treatment of Fedoruk is not in keeping with history behind the statute at issue and the liberal treatment afforded to children. Therefore, Plaintiff's Motion for Summary Judgment is **GRANTED.**

## IV. CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment (Dkt. # 15) is **GRANTED** and Defendants' Motion for Summary Judgment is **DENIED** (Dkt. # 16). Accordingly, the Court **GRANTS** Plaintiffs' petition for review and **REMANDS** this matter for further proceedings. Defendants are **ORDERED** to give deference to the state determination as to the effective date of Plaintiff Fedoruk's adoption.

Dated this 7th day of March, 2018.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge